The next case is United States v. Anderegg, case number 251354. Mr. Goldman, whenever you're ready. Good morning, Your Honors, and may it please the Court, Ross Goldman for the United States. In dismissing the possession count in this case, the District Court endorsed an unprecedented and erroneous extension of Stanley v. Georgia. The District Court's decision is inconsistent with what the Supreme Court has since said about Stanley. The Court's decision conflicts with Supreme Court direction regarding how to interpret Supreme Court precedent. The Court's decision is at odds with the courts of appeals that have talked about Stanley as applying to adult obscenity. And the Court's decision squarely conflicts with the three other courts that have considered this exact issue and held that Stanley is no bar to a Section 1466, Big A, possession prosecution. And what's worse, the consequence of the District Court's decision will be to increase the real risk of real harm to real children in the form of sexual exploitation and abuse, harms that Congress specifically and permissibly targeted when it enacted Section 1466, Big A. As we outlined in our brief, there are two main distinctions between Stanley on the one hand and Section 1466, Big A, on the other that combine to place this statute comfortably within the generally applicable categorical rule that obscene speech is unprotected. First, Stanley is about adult obscenity. Section 1466, Big A is only about and only reaches obscene depictions of children engaging in sexually explicit conduct as that term is defined in HNUSC 2256, Paragraph 2. The second key distinction, Stanley is about, quote, mere private possession. That's the phrase Stanley used ten times in its opinion. And the Supreme Court's post-Stanley case law makes clear that commerce-connected engagement with obscene materials falls outside the scope of Stanley. Paris Adult Theater said that commerce in obscene material is unprotected by any constitutional doctrine of privacy. It is these two features together that make this case fall within, again, the general rule that obscene speech is unprotected and outside the narrow Stanley exception which applies to non-commerce-connected in-home possession of adult obscenity. With respect to Stanley being limited to adult materials, adult obscenity, a couple of key points. First, the material at issue in Stanley involved adults. Second, George's primary justification in support of that statute was what Osborne later called the weak and paternalistic interest in protecting the adult possessor from the purported harms of possessing and viewing adult obscenity. And we know from Stanley too that it mattered that there was no risk of harm to kids. The court says at page 567 of the opinion that there was no danger. The Supreme Court found no danger in that case that that material would fall into the hands of children. And that's why… But we also have Ashcroft versus free speech in a lot of what you're getting at. Ashcroft's squarely addressed. Ashcroft's, I'm sorry, Your Honor? Squarely addressed some of these concerns. So with respect to Ashcroft, I think it is meaningfully and totally distinguishable on the ground that at issue in Ashcroft, of course, was a statute that reached material that showed no actual child and that was not obscene. And so what the court was being asked to do in Ashcroft, and you see this the way they talk about the panel dissent, that they would have had to adopt the panel dissent of creating yet a third bucket of unprotected speech, that is, depictions of children engaging in sexually explicit conduct where no actual child is shown and where the material is not obscene. And the court there said in the context, for example, of the child protection rationales, that those rationales were not enough to unprotect that otherwise protected category of speech. But 1466 BA is the solution to the Ashcroft problem because of the obscenity element. And so because of the obscenity element, this statute cannot reach any material. For example, let me just step back. In Ashcroft, one of the main concerns that you see throughout the opinion is this concern that it could reach art or movies, and the court cites traffic in the movie American Beauty. There is no conceivable way that 1466 BA could ever reach that material because of the obscenity element. And if a fact finder were to determine that that material carried serious literary or artistic value, it would fall outside Miller. We would lose on the statute. So that's why free speech coalition is no problem here, and multiple courts of appeals, Arthur, Shales, Worley, have all helped correctly that 1466 BA solves the problem that Ashcroft identified. And the key difference here is that, again, going back to Stanley, Osborne makes clear that the right in Stanley needs to be measured by the weak and paternalistic interest that Georgia was advancing. That interest could not be less afoot here. This statute is not about protecting Mr. Anderegg from himself. As I said, this statute is about protecting real kids from real harm, the grooming, the normalization of the sexual exploitation and abuse of kids, the wedding, the appetite, the prosecution problems that would persist that Justice Thomas and Justice O'Connor foreshadowed in their free speech coalition. But don't we think we're dancing a little bit farther away from the issue? This is an as-applied challenge. He's not attacking the entire statute. He's attacking the Stanley exception applies to count four, which is possession of obscene material in the home. And so where are the guardrails, or I guess why is the position as applied to Anderegg? Is there any question where the material was possessed? No. I mean, the facts, I think, are going to show that he possessed it in his home. So the reason why the as-applied challenge, the Stanley-based as-applied challenge fails as to Mr. Anderegg's in-home possession of these materials is because the right in Stanley does not apply to obscene materials depicting children engaging in sexually explicit conduct and does not apply where that in-home possession satisfies one of the statutorily required connections with interstate commerce, a connection we will have to prove at trial. And so Stanley is limited to that of adults. That's right, Your Honor. Is it because you're leaning on Osborne for that interpretation? Well, Osborne certainly helps that interpretation, but so does Williams, where the Supreme Court said, you know, talks about Stanley as saying the government may not criminalize the mere possession of obscene material involving adults. And then a couple pages later, Williams again says, this is 2008, that the statute there, quote, precisely tracks the material held constitutionally prescribable in Ferber and Miller obscene material depicting, parenthesis, actual or virtual children engaged in sexually explicit conduct. Again, I think we're taking this language and extrapolating it away from the as-applied challenge. He's not attacking the other ways, the other counts. He's attacking here simply the possession count. And so the Williams case, and I think we've done this a lot below, is merge child pornography and obscene material. They're not the same. Two different statutes that guide both of those decisions. And in Williams, when we were looking at the material or the language from the Supreme Court in Williams, I think that the page that you referenced just now, when he says that there's the block quote, that this behavior, right, is there's no violation under the First Amendment for obscene material, actual or virtual of children. And so are you taking that language and suggesting that it was overturning the language in Stanley? No, and to be clear, it's not that there's no violation. It's that there's no protection for obscene depictions of children engaging in sexually explicit conduct. I think that's on its face exactly what Williams is talking about. And we're not trying, and I certainly don't mean to move away from the as-applied challenge at all in this case. The as-applied challenge is this. Stanley protects the in-home right to possess AI-generated images of children engaging in sexually explicit conduct, even where that possession satisfies one of the statutory connections with interstate commerce. And our response to that argument is that Stanley is not that broad. And there are background principles, I think, that further inform this. So the idea that Stanley is a narrow exception to the otherwise generally applicable non-protection of obscene speech is something the Supreme Court has said time and again. Yes, Your Honor. Getting to that point, in count four in the indictment, it specifically alleges that any visual depiction involved in an offense had been shipped and transported in interstate and foreign commerce. So even in the possession count, that's one of the things you have to prove. And doesn't that bring the facts of this case, then, closer to, you know, 12, 2,000 foot of super slip? 100%, Your Honor. Our commerce-based argument in this case is grounded largely in that line, and there are six or seven of them, the post-Stanley 1970s cases, where defendants were repeatedly urging the Supreme Court to extend Stanley to various commerce-connected engagements with obscene materials. Where Stanley, the allegation, there were no allegations about how he got the materials. They were just focusing on the possession in and of itself. Correct. That's exactly right, Your Honor. And every single time, and there were multiple, every single time the Supreme Court was asked to extend Stanley to commerce-connected engagement with obscene materials, the Supreme Court said no. When the Supreme Court was asked to extend Stanley to material that shows actual children, the Supreme Court said no because of the harm imposed on real children. The harm imposed on real children here by this statute is what makes this case so much more like Osborne than like Stanley. Delving to that a bit, you know, sometimes government tries to or alleges interstate commerce more broadly by saying, for example, the depictions were created by a computer that was sold in interstate commerce, right? But here, and that would satisfy presumably interstate commerce requirement for the statute itself, but here you're taking, the government's taking an even more, I guess, rigorous approach and saying, well, not only was the computers and the materials transported in interstate commerce, but actually the depictions themselves were. So the indictment charged 1466, Big A, D2, excuse me, D4. D4. D4, excuse me, which is the images, the obscene material traveling interstate commerce or were produced with materials that traveled, charged both. Again, we have not gone to trial yet, obviously, but I expect our evidence will prove the produced using materials prong, the computer and the stable diffusion software that was downloaded to generate these images. But that's the commerce connected engagement with these materials. And the reason we know. But isn't the key distinction between this and Stanley the fact that the visual depictions were also transported in interstate commerce? Right? That's what the indictment alleges. And any visual depiction involved in the offense had been shipped and transported. Well, it alleges, I think the indictment alleges both prongs of D4. The images were produced and were, excuse me, the images traveled interstate commerce and were produced using materials that were traveling interstate commerce. Right, but it's not an or, it's an and. Right, but I think the indictments can charge in the conjunctive and be proven in the disjunctive. And so what I expect our trial evidence is going ultimately to prove will be the produced using materials. If you, if you, well then that raises a question in my mind about how far, at least the indictment itself, putting aside the subject matter of whether the indictment itself takes it out of Stanley. Because the, you know, in Stan, the cases after Stanley were dealing with the use of commerce or use of depictions in commerce. Buying it, sending it, receiving it, et cetera, et cetera. And here you're saying the government can prove count four by relying upon the second prong that is used by materials shipped to interstate commerce without having to show that the depictions themselves traveled through interstate commerce, which seems to distinguish then count four from the cases that you were talking about. So I think with those cases, those cases it is true that the actus reus in those cases was something other than possession. But the lesson that emerges from those cases is that Stanley, and again, you have to look at Stanley through everything the Supreme Court has said since about Stanley. And the lesson from those cases is that Stanley protects a place, the home. And that activities, the engagement with commerce that extend outside the home fall outside that narrow protection. And again, Paris Adult Theater says we have- But here there wasn't just simple possession. I'm sorry? There was the shipping and the transporting. I'm sorry, say it one more time. Here is the, the indictment says that it was beyond just the mere possession in the home. There was the shipping and the transporting of the visual depiction. So that's the way it is charged. Right. Well, we have to, again, we have to charge one of the D1 through D4 predicates, or, you know, jurisdictional connections with interstate commerce. And what we charged is D4, which has the two parts to it. The materials moved in commerce. The obscene material moved in commerce or was produced. But you're saying that you can prove them either one. You don't have to prove both. No, for sure. That's right. That's right. We don't have to prove both. And this produced using materials, this jurisdictional language is not unique to 1466 Big A. It is in 2251, 2252, 2252 Big A. Let me get back to Judge Lee's question, though. Is this the argument that this is what pulls it away from Stanley? This is part of why it gets pulled away from Stanley. So there are two reasons that this statute falls outside of Stanley. And they can exist independently, sufficient bases to remove it from Stanley, but certainly in combination. It is the adult-child distinction and the commerce-no-commerce distinction that combined make this outside of Stanley and within the otherwise generally applicable rule that obscene speech is unprotected. And I do just want to say one last thing. Go ahead. I'm good. Taking it outside of Stanley, your rationales for taking it outside of Stanley, I understand that Ashcroft v. Free Speech is not obscene. I get the legal argument there. But I don't just read the syllabus and the holding for Ashcroft, right? I look at the reasoning of the Supreme Court. That's part of the precedent we need to follow. How are your reasons for taking this outside of Stanley consistent with Free Speech when I read in Free Speech rejecting some of the very arguments you have in terms of the rationale for, well, it creates the potential for grooming. It essentially creates the market, creates more appetite. I agree that those are all concerns, but they seem to me to be concerns that the Supreme Court has told me I'm not to look at here. So I think the doctrinal point is critical here. What the Supreme Court was rejecting in Ashcroft was this idea that the grooming, the normalization, those concerns are by themselves enough to unprotect otherwise protected speech. In other words, the starting point for that material, maybe this is a useful way of thinking about it, the starting point for the material at issue in Free Speech Coalition as the Supreme Court was thinking of it was protected. No actual child, so not Ferber and Osborne, not obscene, so not Miller, protected speech. And then there was this argument from the government was here are all these child protection concerns that we think are sufficiently grave and compelling that you should now unprotect this otherwise category of protected speech. And the Supreme Court said no. But that's why 1466 B.A. is the solution to this problem because of the obscenity element. And because of the obscenity element, this statute is only going to reach speech that is constitutionally unprotected. And from that perspective, what the child protection concerns are doing is they're not being used in furtherance of unprotected speech. They're being used in furtherance of driving home just how different the purpose of this statute is from what motivated the Supreme Court's decision in Stanley. And we know from Osborne how critical it was to the holding in Stanley that the justification that Georgia was advancing in defense of that statute was that we can paternalistic in protecting the adult possessor, which is different in every way from what this statute is about. May I make one last point? Yes, go ahead. The last point I want to make is just on the adult-child point. One of the lessons from Ferber, and Ferber says that when the government is regulating to protect children, and in particular to protect children from sexual exploitation and abuse, the government has greater leeway in undertaking those regulations, even where doing so may otherwise touch on constitutionally sensitive rights. And that language has been picked up by Knox in the Third Circuit, Vincent in the Eighth Circuit, and that is critical to why, again, the fact that this statute is so narrowly drawn at obscene images of children engaging in sexually explicit conduct that is designed to protect real kids from real harm is what takes this case outside of Stanley and places it comfortably within the general rule that obscene speech is unprotected. Mr. Coleman, can I ask you about stable diffusion? You know, we have this AI kind of overlay over this case, and I just wondered if I could ask you some technological questions. In free speech, Justice Kennedy mentioned morphed images and said, you know, we're not dealing with morphed images in free speech. And that was before this whole AI thing kind of came about, and one can argue that AI images are the ultimate morphed images, right? Is there any way to disaggregate an AI image? In other words, if the, you know, stable diffusion, obviously like a lot of other AI large language models, takes all these images from the Internet, like real images, and then kind of combines them. Is there any end, you know, at least from the literature, it seems that sometimes the person that it creates is unrecognizable from any real person, and other times you can tell who that person is. And it's a direct correlation to images out there on the Internet. Is there any way to figure out the source of an AI image that stable diffusion creates? To your knowledge, I mean, I know you're a lawyer, you're not an AI expert, but I'm just curious. Well, let me try to answer Your Honor's question this way. And I think part of what's maybe tripping you up is a terminology point. So when we think about AI generated imagery, I think it's useful to think about it in terms of two separate buckets. One is like a deep fake image or a morphed image, which take a picture of a real person, use AI to manipulate it to create some now fake image, but of an identifiable person, but the image is not real. And then you have, for lack of a better word, a pure AI generated image that shows no identifiable or actual minor. That pure AI generated imagery we know from the sort of investigative facts in this case, that's what this case is about. This is the defendant using stable diffusion, entering prompts, I'm making a point here, I'm just paraphrasing, but create a picture of this child doing this in this scene, and then stable diffusion generates a responsive image to that. That child, and I think the image in this case, totally bear this out, is photorealistic, but we know in many ways indistinguishable from an actual child being abused. But we know from the discovery that it is not an actual identifiable child. Okay. Is that at all responsive?  Okay, thank you. I'm going to maybe not pronounce this right, but it's Mr. Bugney? Yep. Okay, great. May it please the court. I'm Joe Bugney, here on behalf of Mr. Anderegg. I'd like to begin by answering your question. When it comes to the jurisdictional part of this, the government's theory has always been that it was produced in the home. That was in count one, but also that the computer itself, which had been shipped, it was an old, not MacBook, but an old computer, that that had been used on it. So it wasn't that these were transported across state lines. This has always been within the isolation of his home. And I'd like to touch upon your question, Judge Pryor. What we're really dealing with right now, and where I think, Judge Kollar, your pushback is, is that when it comes to Ashcroft, you're looking at the overriding of a right. These are First Amendment protected. If you begin with the premise that Stanley is a First Amendment case, or a substantive due process case, it doesn't matter, that it protects a right, then what they're doing is they're trying to take away a right. And they're saying these countervailing interests allow us to take it outside of that right, that right that stood for 60 years. Now, how can you do that? Well, you can't, right? That's up for the Supreme Court. If the Supreme Court wants to say, look, we're going to reweigh this, and we think that Osborne somehow controls, well, that's for them to say. But no court has ever said that. So is it your contention that Stanley is not limited to obscene material involving adults? Oh, absolutely not. I think obscene material, so it is not limited. One, that's never in the argument, right? If you were to take the state's argument or the government's argument, well, it only actually protects pornographic films. What about pornographic pictures? Why does the level of abstraction go only to adults? Because the Supreme Court said in U.S. v. Williams that it's limited to adults. I don't think it said it's limited to adults, right? Involving adults. No, but that's the example it's giving. No, that's what it says. No, but it's not that it's limited. Sorry, I don't mean to cut you off, Your Honor. No, I don't think that it's limited in United States v. Williams that that becomes part of the holding that we are now saying that Stanley is only for adults, but instead that Stanley stands as a geographic limitation, and that's what it is. Within the privacy of the home, you could have it, whether it be a dirty magazine, whether it would be a racy novel, whether there would be anything else that could be considered obscene, whether it would be crushed videos. All of those things would find shelter within Stanley, and they'd say, you can't receive it. You can't transport it. But within the privacy of your home, you may view it, you may possess it. That's what Stanley provides, and that's what that language it has. It keeps on going on. It says, look, the privacy of a man's own thoughts, they're not going to be infringed upon by the state. Those are lofty promises, and they're promises that haven't been eroded. They haven't been taken, and they're saying, look, they haven't been extended. That's very clear. But it wasn't that Osborne said, look, this is only going for adults. They're saying, Osborne takes us out of Stanley because it's for actual children, and we're going to adopt it because it's not the content of the images but the way they were produced. That's what Osborne is getting at. So the geographic limitation of Stanley prevails. I think once you get that point right, and it's not limited to only adults, and it definitely extends to animals and extends to anything else that anybody else would have, then it becomes how do you override it. I thought you were going to ask a question. Nope. My eyebrows just do that sometimes. I was hoping it was foreshadowing a great one or at least an agreement. I think that's really the core aspect here is that the state wants us to read into the Supreme Court case something that they hadn't read in. They want us to undermine a holding that maybe isn't popular or maybe they don't like, and that's fine. But it's not for this court. It's not for this court to make that call. This is an as-applied challenge. And as an as-applied challenge, it really is. We got to look at the facts. We peeked into the discovery, and we said, look, this is how you're going to prove your case. You're going to prove your case based upon this, and it is the use of the computer within the privacy of your own home. And if that's going to be your theory of the case, then I'm able to say Stanley protects that. And Stanley protects that absolutely. And with that absolutely. So is there no contention that these images were shipped or transported? Correct. Sorry, other images were transported in counts two and three. They were distributed. So that takes that aspect of it. But it's not that these images that he's charged with possessing that they were otherwise produced outside of his home. It's that they're produced here on his computer within his own home. And you can look at that, like the Justice Black dissent or concurrence, I can't remember which, in 37 pictures. It's like, look, you're going to relegate Stanley to this. You've got to write the racy novel up in the attic. You've got to print it in your basement and read it in your living room. Well, that's what he did. If that's what he did, then that's what that protection provides. And if that's what that protection provides, then this court can be comfortable with it. It can be very comfortable with it, because all of the other problems that the state may identify, they're also taking care of in counts two and three, whetting the appetite, distributing them, doing all those things that we say, like, hey, we want to be able to combat that. All of that can be taken care of in counts two and three. But what do we do in count four, where it says that these images were shipped, transported, and transported? Well, that's the way they pled it, right? But they're going to prove it, just like they allege in the conjunctive they've proven this, or, you know, we all know that, right? And so, like, you know, it's going to be heroin, cocaine, crack, and marijuana, and then suddenly at trial it's only about marijuana or whatever it might be. Here we know how they're going to prove it. And so that's the allegation that we alleged. That's what we proffered in our motion to dismiss, and that's what the district court held. I think going back to your earlier cases, I think you'd have to say, like, is that clear error? Like, no, the district court knew what the facts were. We had 90 pages of briefing. We had six motions. We've had, like, 15 bail hearings. That's an exaggeration. We've had many bail hearings. The court's very familiar with the facts of this case. Would you concede that if the AI-generated data isn't produced on that computer but goes off to some website, some, you know, AWS or whatever, that is housing something, and then the image comes back to the computer, then it's transported? I mean, you're making it sound like this is really just, you know, produced on the computer sitting in someone's house. Yeah. But I'm not sure. I'm not trying to get into technological. I'm certainly no technological expert, but are you conceding the government could prove the charge that way and not run afoul of free speech coalition standing? Not kind of remove that protection you're saying if they're showing, well, wait a second, it somehow got to the computer, and the computer itself didn't do everything necessary to produce that image. I think you would then be going into the receipt category. So if it was charged as a receipt category, that's what you would have, and that's what we usually have with, you know, the download of the child pornography or whatever else that we often have. But I wouldn't give that away. No, I'd say actually, like, I don't know how that image is created. I know it's created on that, you know, least alleged that it's created on that computer at that time. Now, whether or not how it would all work within the stable diffusion, it goes to AWS. We never had that, so I don't want to give that away, let alone if it's multiple computers. So, as Lee, you were going to ask a question? No. No, no, just reading.  I do think that coming back to one kind of pivotal point here is, what does Stanley actually say, right? And that's where, you know, I thought about maybe doing a dramatic reading for my first 90 seconds, but I thought your question was really what I wanted to address, about the D1, because I would hate to lose it, or D4, I'd hate to lose a case on this mis-idea of, like, hey, what is really going to be at issue here in an as-applied challenge? Stanley is asserting the right to read or observe what he pleases, the right to satisfy his own intellectual and emotional needs, and the privacy of his own home. He is asserting the right to be free from the state inquiry and to the contents of his library. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of his own home. If the First Amendment means anything, it means that a state has no business telling a man, sitting alone in his own home, what books he may read or what films he may watch. Those words are not given an asterisk. Those words are not dialed back. They present a right, a right that's absolute and a right that is only absolute within a person's own home. And that's where this is. All of this took place within his own home. So that's why you're not attacking Cal One, the production. Well, I did. I did attack that. I thought that in the judge's order, he says, look, my logic, the logic of Stanley should be such, right? And if you look at that Judge Black quote, but he said he split the baby and said, like, you know, Stanley protects it. You can't read Stanley any other way than I'm reading it, right? He says it protects it, but I'm not willing to go so far as to production, right? And so he just said, I'm not going to give you count one, and I can't take interlocutory appeal in the denial of motion to dismiss. So that issue is not before this court. It's limited to count four. And count four, I get it. I would be asking for an expansion of Stanley in some way. I'd be like, hey, you've got to actually keep this geographic and think about it when it comes to production. I'm not asking for an expansion. I'm just asking for an application. I'm asking for a very simple application of a very simple principle that's been around for over 60 years or about 60 years and that everyone has accepted. So you don't think you're asking for an expansion of Stanley into CSAM materials? No. I'm just saying into obscenity. So if you mean CSAM, do you mean CSAM as in child pornography?  No, I think Stanley, Osborne is very clear. When it comes to actual child pornography, as you said in the beginning, we have to use those terms precisely. Well, you want to extend it to virtual child pornography, right? Virtual obscene material. Yeah, that's it. I just wanted to, actually, I'm going to dial that from both of you. I just actually wanted to apply to obscene materials. Like virtual or not, whatever it is, it's protected within the home within Stanley. So I don't need the caveats. We don't need to have these sort of gradients. Just like if I were standing up here and it was a Crush video, right? I wouldn't be like, I need you to extend Stanley to Crush videos. Under 18 U.S.C. 48, those actually have to be obscene to be criminalized. I'd say Stanley provides that. It's the same privacy of a person's home. Obscenity does not reach within that. So it's not an extension at all. It's just a simple application within those four walls. That's all I'm asking for. So it's not the different contents, any more than it would be. I believe that the allegation was that Stanley was a male-female sexual act, right? If it was two men, that wouldn't be an expansion of Stanley, any more than two women. It wouldn't be an expansion of Stanley. It would just be Stanley. Stanley applies for obscenity. And if you make that rule and you make that decision, which I think is very firmly rooted in the Supreme Court precedent, then this is a very easy case to decide. And it just comes down to that simple principle. With that, I don't know if the Court has any other questions. I mean, this is a very important case to my client, and I want to make sure that there are none unsaid. Thank you very much. Thank you, Your Honors. Mr. Goldman, I'll give you a minute. Actually, sorry, can I have one? Of course. Sorry. There is one small thing, and it was actually in the State's brief. They pointed it out, and I would just like to know you're very smart law clerks that didn't miss this, though I did, is that United States v. Toma, 726 F. 2nd, 1191. So it's found, actually, in the State's brief, page 30, note 15. And here this Court, back in 1984, said, It is clear the defendant has a constitutionally protected right to possess obscene materials in his home. This is actually dealing with child pornography before child pornography, so CSAM. This is from this Court. I'm sorry, page 30? Page 30, note 15 of the government's brief. Okay. I'm with you. We also agree if the government had violated this right in the course of investigating the defendant, then it would be truly outrageous standard would not be applicable. All right? We do not agree, however, that the CF campaign impermissibly induced defendant to leaving the Stanley zone of protection and selling his material. This Court, 40 years ago, was willing to admit that there is a Stanley zone of protection, and that was dealing with 2251, prosecution, and dealing with entrapment. So it's not as though I'm asking for anything that's never been decided before, never been thought of before. This is something that's been consistently decided. And it's one that there isn't a lot of case law on it because I think most people, they don't charge it as possession, any more than the Nostrander case.  Courts are quick to recognize Stanley is very clear on what it protects. You can't leave the house, but within the house, you have that. So I just point the Court to those two. Thank you very much, Your Honors. Thank you. Mr. Coleman, I'll give you a minute. Thank you, Your Honor. With respect to Thoma, Thoma predated Osborne, which held that, obviously, the possession of child pornography in the home was constitutionally unprotected. Thoma also predated this Court's decision in Anderson, which also predated Osborne, but said that it was unclear whether the in-home possession of child pornography was constitutionally protected. A couple of brief points in response. Mr. Bugney read from Stanley about the First Amendment, the right to receive information ideas in the home, and he said that that has never been dialed back. But Osborne makes clear that that language does not reach as far as Mr. Bugney makes it sound. That language does not reach the possession of child pornography showing actual children because the interest, the harms that that material imposes on children is such to bring it outside of Stanley. That's the argument here. The harms that this material poses, the threat of harm that this material poses to real kids is what makes this case so much more like Osborne than Stanley. And Judge Kohler, in response to our dialogue before about Free Speech Coalition, the prosecution concerns that were in play in Free Speech Coalition are ever more pronounced today. And I would urge the Court to look no further than the images in this very case, where these children who are being sexually abused are totally indistinguishable from actual real children who are being actually really sexually abused. And that indistinguishability, that technological advancement, aside from the doctrinal point that I made before, but that technological advancement puts that concern ever more starkly in relief in this case and puts the prosecution rationale front and center with respect to all of the other child protection interests that are deeply at stake in this prosecution in which, again, Congress specifically impermissibly targeted when it enacted Section 1466, Big A. I see my time has expired. I'm happy to answer any other questions for the Court. If not, we would urge the Court to reverse. Thank you. Thank you, Your Honor. Counsel, thank you for both arguments today. They were very insightful. All right, the next case.